**Alfred FIORENZO, David Ohlson, and Patrick Shannon, Plaintiffs,**

v.

**Samuel W. NOLAN, individually and officially, and James E. O'Grady, in his official capacity, Defendants.**

**No. 86 C 9261.**

United States District Court, N.D. Illinois, E.D.

Jan. 30, 1991.

John L. Gubbins, John L. Gubbins and Assoc., Ltd., Chicago, Ill., for plaintiffs.

Mark A. Stang, Edward F. Ryan, Steven M. Elrod, Burke, Bosselman & Weaver, Michael T. Benz, Brian J. Gold, Lisa A. Bartosic, Sidley and Austin, Chicago, Ill., for James O'Grady.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Two motions are now pending before this court—defendant James E. O'Grady's motion for summary judgment, and defendant Samuel W. Nolan's motion for summary judgment. For the reasons stated below both motions must be granted.

## I.  BACKGROUND FACTS

The parties do not dispute the following facts.  Plaintiffs Alfred Fiorenzo, David Ohlson and Patrick Shannon are white police officers with the Sheriff's Police Department of Cook County, Illinois.  Defendant James O'Grady was elected Sheriff of Cook County on November 7, 1986, and took office on December 1, 1986.  Defendant O'Grady's immediate predecessor as sheriff was Richard J. Elrod, who was originally named by plaintiffs as a defendant in this action.

Defendant Samuel Nolan served as Chief of the Cook County Sheriff's Police Department from July 7, 1986 to November 16, 1986.  As Chief of the Cook County Sheriff's Police Department defendant Nolan was delegated complete responsibility for, among other things, making transfers within the County Sheriff's Police Department for those persons holding the rank of "police officer."  "Police officer" is the lowest rank in the Cook County Sheriff's Police Department.

Plaintiffs' complaint arises from their transfers, which occurred after Sheriff O'Grady's election but prior to his taking office.  Before plaintiffs were transferred, they each served in the rank of "police officer" in the Office of Field Operations.  Plaintiff Fiorenzo served in the Fugitive Section and plaintiffs Ohlson and Shannon served in the Prosecutive Support Division of the Office of Field Operations.

On November 6, 1986 the Sheriff's Department issued a personnel memorandum, signed by Chief Nolan, transferring each of the plaintiffs from his respective assignment to the Uniform Patrol Division of the Field Operations Bureau ("Personnel Memorandum").  The transfers were effective November 9, 1986.  The transfers were lateral transfers—they did not affect plaintiffs' compensation, benefits, or rank.  According to plaintiffs, however, the positions to which they were transferred were less "prestigious" than their previous positions. (Pl.'s 12(m) Statement, ¶ 6.)

Pursuant to the Personnel Memorandum three black police officers who had been serving in the Uniform Patrol Division of the Field Operations Bureau were transferred to positions similar to the positions plaintiffs had held prior to their transfers—one to the Fugitive Division and two to the Prosecutive Support Division. A fourth black police officer was due to be transferred to replace a fourth white police officer, but at the request of the black officer the order was rescinded.

At the time of the issuance of the Personnel Memorandum, Richard Elrod was the Sheriff of Cook County. Prior to issuance of the Personnel Memorandum Chief Nolan did not discuss the transfer order in general or plaintiffs' transfers in particular with Sheriff Elrod, who was out of town at the time. Upon Sheriff Elrod's return, Chief Nolan informed him of the transfers. Chief Nolan also informed Sheriff-Elect O'Grady of the transfers.

Because of an injury suffered in an automobile accident, on November 1, 1986 Officer Fiorenzo was placed on a medical leave of absence. After several months, when Officer Fiorenzo returned to duty, he was assigned at his own request to the Prosecutive Support Division in the Office of Field Operations. Consequently, contrary to the Personnel Memorandum, he never served a day in the Uniform Patrol Division of the Field Operations Bureau.

After their transfers Officers Shannon and Ohlson served less than four months in the Uniform Patrol Division of the Field Operations Bureau. Effective March 1, 1987 both officers were transferred back to the assignments that they had held in the Prosecutive Support Division of the Office of Field Operations.

At the time of plaintiffs' transfers neither Chief Nolan nor Sheriff Elrod were aware of either the race or the political affiliation of any of the plaintiffs. Moreover, there is no evidence that Chief Nolan or former Sheriff Elrod had any idea as to the political affiliation of any of the three black police officers who were transferred into the Prosecutive Support Division and

Fugitive Division of the Field Operations Bureau.

On November 28, 1986—nineteen days after their transfers became effective—plaintiffs filed their two-count complaint in this case. Count I alleges that plaintiffs' transfers violated the Equal Protection Clause, as guaranteed by the Fourteenth Amendment and 42 U.S.C. Section 1983 ("Section 1983"). In Count II plaintiffs aver that they were transferred because of their political affiliation, in violation of the First Amendment as guaranteed by the Fourteenth Amendment and Section 1983.

Plaintiffs sue defendant O'Grady in his official capacity as Sheriff of Cook County and defendant Nolan in both his official capacity as Chief of the Cook County Sheriff's Police Department and in his individual capacity.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

In ruling on a motion for summary judgment the evidence of plaintiffs, the non-movants, must be believed. All justifiable inferences must be drawn in plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading. Instead, it must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A party bearing the burden of proof on an issue must do more than simply "show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 587, 106 S.Ct. at 1356.

With these standards firmly in mind, the court now resolves the separate motions for summary judgment of defendants O'Grady and Nolan.

### A. *Defendant O'Grady's Motion for Summary Judgment*

■ Defendant O'Grady has moved for summary judgment claiming that plaintiffs lack evidence to support an official capacity claim against him. Specifically, defendant O'Grady contends that plaintiffs have no evidence suggesting that former Sheriff Elrod or anyone else with final policymaking authority ordered or approved plaintiffs' transfers. Accordingly, defendant O'Grady argues that plaintiffs' official capacity claim against him must be dismissed. Defendant O'Grady is right.

In *St. Louis v. Praprotnik* the Supreme Court reviewed several guiding principles governing when a decision on a single occasion may be enough to establish an unconstitutional municipal policy:

First, [m]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of *state law.* Fourth,. the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business.

485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citations omitted) (emphasis in original).

For purposes of this motion defendant O'Grady does not dispute that his office has "final policymaking authority" under state law for certain personnel matters in his office. (O'Grady Mem. in Support at 3.) Instead, defendant O'Grady notes that the requirements for county liability have not been met because plaintiffs have failed to introduce evidence that the Sheriff himself was responsible for the transfers in question—that is, that the county "officially sanctioned or ordered" the unconstitutional conduct. *Id.*, 108 S.Ct. at 924.

As the Seventh Circuit Court of Appeals stated in *Cygnar v. Chicago:* "[T]here is no doctrine of superior's liability in § 1983 actions; instead, the official must actually have participated in the constitutional wrongdoing." 865 F.2d 827, 847 (7th Cir. 1989). In this case Sheriff Elrod was away when Chief Nolan approved the transfers in question and was only informed of the decisions after they occurred. Similarly, Sheriff–Elect O'Grady was merely notified of Chief Nolan's decisions.

This evidence is insufficient to raise a genuine issue of material fact that the Sheriff directly participated in the transfers in question. Accordingly, defendant O'Grady's motion for summary judgment must be granted.[1]

■ Plaintiffs respond to defendant O'Grady's arguments with two unavailing theories: first, that Sheriff Elrod in some way had delegated to Chief Nolan full discretion to make low-level transfers in the Sheriff's Department; and second, that Sheriff Elrod somehow ratified the transfers after they were made.

As to plaintiffs' delegation theory, it is true that authority to make county policy not only may be granted directly by a legislative enactment, it also may be "delegated by an official who possesses such authority." *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d

---

**1.** Plaintiffs do not allege in their complaint that the Sheriff's office had a policy, custom, or practice to discriminate for racial or political reasons and that plaintiffs were transferred pursuant to such a policy.

452 (1986). However, plaintiffs have cited no evidence that Sheriff Elrod in fact delegated to Chief Nolan full discretion to make low-level transfers like those at issue here. On the contrary, the only evidence presented by plaintiffs on this issue is that Chief Nolan notified Sheriff Elrod and Sheriff–Elect O'Grady after the transfers had been approved, yet Sheriff Elrod took no action to rescind those transfers. (Pl. Mem. at 5, *citing* Nolan Dep. at 12, 28–42.)

However, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority...." *Praprotnik*, 108 S.Ct. at 927. Indeed, a county is not liable merely because the official who inflicted the alleged constitutional injury had the final authority to *act* on its behalf; rather, the official in question must possess "final authority to establish municipal policy with respect to the [challenged] action." *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299. Because plaintiffs have raised no genuine issue of material fact as to whether Sheriff Elrod delegated to Chief Nolan final authority to establish policy with respect to the transfers in question, plaintiffs' delegation theory fails.

█ Plaintiffs' theory of ratification is similarly unavailing. Plaintiffs argue that Sheriff Elrod must have ratified the transfers in question because he could have, but did not, rescind them. (Pl.Mem. at 6.) But, as with plaintiffs' delegation theory, mere failure to stop transfers is insufficient participation in constitutional wrongdoing for Section 1983 liability to lie. *Cygnar*, 865 F.2d at 847. This court rejects plaintiffs' argument that Sheriff Elrod's after-the-fact knowledge of plaintiffs' transfers alone is sufficient to raise a genuine issue of material fact as to ratification. Such a result would eviscerate the court's holding in *Cygnar*.

On the contrary, ratification requires that the authorized policymakers "approve a subordinate's decision and the basis for it." *Praprotnik*, 108 S.Ct. at 926. "Simply going along with discretionary decisions made by one's subordinates ... is not

a delegation to them of the authority to make policy." *Id.*, 108 S.Ct. at 927.

The evidence introduced by plaintiffs—even when viewed in the light most favorable to plaintiffs, as this court must on defendants' summary judgment motions—indicates at most that Sheriff Elrod simply went along with the discretionary decisions made by Chief Nolan, rather than approving both the decisions and their bases. Accordingly, plaintiffs' ratification theory fails. Defendant O'Grady's motion for summary judgment must be granted.

### B. *Defendant Nolan's Motion for Summary Judgment*

For claims against him in his individual capacity, Chief Nolan has moved for summary judgment based on the doctrine of qualified immunity. For claims against him in his official capacity, Chief Nolan has moved for summary judgment arguing that plaintiffs have failed to present evidence that he had final policymaking authority or that the Sheriff's Department had a *de facto* policy of racial or political discrimination. Chief Nolan's arguments prevail as well.

Summary judgment is the proper manner to resolve a claim of qualified immunity as soon as possible because it protects government officials from the costs of trial. *Rakovich v. Wade*, 850 F.2d 1180, 1205 (7th Cir.1988). Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Auriemma v. Rice*, 910 F.2d 1449, 1452 (7th Cir.1990), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, qualified immunity analysis entails a "purely objective inquiry to determine whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Id.*, *quoting Polenz v. Parrott*, 883 F.2d 551, 554 (7th Cir.1989).

■ As in *Auriemma v. Rice*, this case requires applying an objective analysis to claims that depend on an official's state of mind—specifically, claims that Chief Nolan intended to discriminate against plaintiffs on the basis of their race and political affiliation when he approved their transfers. When state of mind is at issue, the Court's reasoning in *Harlow v. Fitzgerald* calls for this court to conduct a two-part inquiry: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question? ... Intent is relevant to (1) but not to (2)." *Auriemma*, 910 F.2d at 1453, *quoting Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986). Thus, this court's consideration of intent is relevant to the determination of whether a constitutional violation exists but not to deciding whether the constitutional standard was clearly established. *Id.*

As to the first part of this two-part analysis, there is no genuine issue of material fact that Chief Nolan did not discriminate against plaintiffs because of racial animus or political affiliation, and thus the alleged conduct does not set out a constitutional violation. The parties do not dispute that this case involves only the low-level transfer of, at the most, four police officers within the Sheriff's Police Department. Unlike in *Auriemma*, this case involves no large-scale reorganization of top management positions within a department.

Moreover, all of the transfers at issue were merely lateral transfers, involving no loss of rank, pay or benefits. And importantly, defendants have articulated non-discriminatory bases for each of the transfers —namely, complaints about plaintiffs' professional performance. (Peters Dep. at 22–25; Larkin Dep. at 6–9; Diggs Dep. at 6–7; Dalen Dep. at 15–16; Nolan Dep. at 28.)

The parties have introduced no evidence whatsoever suggesting that Chief Nolan transferred plaintiffs because of either their race or their political affiliations.[2] Indeed, the evidence presented suggests just the opposite—that at the time of the transfers Chief Nolan did not even know of plaintiffs' race or political affiliations. (Nolan Dep. at 11–12, 37.)

Because there is no real dispute as to these issues, there is no genuine issue of material fact that Chief Nolan's conduct did not set out a constitutional violation.[3] Accordingly, summary judgment on the basis of qualified immunity must be entered in Chief Nolan's favor on the claims brought against him individually.

■ Chief Nolan is entitled to entry of summary judgment on plaintiffs' claims against him in his official capacity as well. There is no genuine issue as to the material fact that Chief Nolan did not have final policymaking authority under state law to order the transfers at issue.

As defendant O'Grady helpfully notes, Article VII, § 4 of the Illinois Constitution establishes the office of Sheriff. Ill.Ann. Stat., Const. Art. VII, § 4(c) (Smith–Hurd 1971). When Chief Nolan transferred plaintiffs, Illinois law required the Sheriff of Cook County to maintain within his office a division to be known as the County Police Department, the department which employed plaintiffs. Ill.Ann.Stat. ch. 125,

---

**2.** Plaintiffs have cited no cases suggesting that the fact that when a few people who are members of one racial group replace members of another racial group alone creates a genuine issue of material fact that race motivated the transfer decisions. Similarly, the cases cited by plaintiffs do not support the notion that the fact that transfers occurred prior to a change in administrations alone creates a genuine dispute that political affiliation motivated the transfer decisions.

Plaintiffs' citation to *Meeks v. Grimes*, 779 F.2d 417 (7th Cir.1985) is insufficient. The court in *Meeks* simply affirmed a district court determination, after a trial on the merits, that discrimination because of political affiliation could be found based not only upon "the strong circumstantial inference arising from the close temporal proximity of the defendant's assumption of office and the dismissals," but *also* upon "the credibility of the testimony heard at trial"— testimony which included evidence that plaintiffs had been politically active in opposing the election of the judge who fired them. *Id.*, 779 F.2d at 418.

**3.** Given this holding the court need not address the second prong of the qualified immunity analysis—whether the constitutional standards allegedly violated were clearly established at the time in question.

§ 51 (Smith–Hurd 1967).[4] Illinois law further charges the Sheriff with the responsibility of employing deputy sheriffs, including police officers. Illinois law vests with the Sheriff responsibility for appointing deputy sheriffs to various ranks and for disciplining them, subject to the limitations imposed by the Cook County Sheriff's Merit Board and the Cook County Sheriff's Merit Act. *Id.*, §§ 51–63.

The parties have presented no evidence (and this court has found no evidence) supporting the notion that state law in some way vested Chief Nolan with final policymaking authority for making transfers in the Sheriff's Department. In their response to Chief Nolan's motion for summary judgment, plaintiffs simply state, "Nolan was authorized as a matter of policy to make the November 9 transfers on his own." (Pl.Mem. at 2.) In support of this conclusory proposition plaintiffs merely cite to "Nolan Dep"—providing no page reference whatsoever to Chief Nolan's fifty-page deposition transcript.

This court independently searched Chief Nolan's deposition, concluding (apparently as plaintiffs did, given their failure to offer a precise citation) that it offers no proof that state law vested Chief Nolan with final policymaking authority to make the transfers at issue. At best, Chief Nolan's deposition testimony indicates simply that he had authority to make discretionary transfer decisions within the Sheriff's Police Department. Neither Chief Nolan's deposition nor any other evidence brought to this court's attention indicates that Chief Nolan was delegated authority to set employment policy in the Sheriff's Department. *Cf. Praprotnik,* 108 S.Ct. at 926–27; *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. 1300 n. 12. Accordingly, Chief Nolan's motion for summary judgment on claims against him in his official capacity must be granted.

█ Similarly, summary judgment must be entered in Chief Nolan's favor on plaintiffs' individual claims against him, as plaintiffs have failed to raise a genuine dispute as to whether the Sheriff's office had a *de facto* policy of race discrimination or political discrimination.

Plaintiffs argue that their transfers constitute a "custom or practice" of discrimination because Chief Nolan's single order resulted in four separate instances where whites were to be replaced by blacks. (Pl. Mem. at 6.) However, plaintiffs have cited no case suggesting that these few transfers alone, in the context of a single transfer decision, raise a genuine issue of material fact of a "custom or practice" for purposes of imposing county liability.[5]

To survive summary judgment on their official capacity claims against Chief Nolan, plaintiffs must present evidence raising a genuine dispute that Chief Nolan's conduct, although not authorized by written law or express county policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 108 S.Ct. at 926, *quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970). Plaintiffs' invocation of the fact that Chief Nolan, on a single occasion, attempted to replace four white officers with four black officers, constitutes no such evidence. Accordingly, Chief Nolan's motion for summary judgment on the claims against him in his official capacity must be granted.

---

4. The Illinois General Assembly recently repealed this section effective January 1, 1990, replacing it with a similar provision, Ill.Ann. Stat. ch. 34, ¶ 3–7001 (Smith–Hurd 1990 Supp.). The new provision, however, is irrelevant to this court's determination of whether, in November of 1986, state law vested Chief Nolan with final policymaking authority.

5. *Jones v. Chicago,* 856 F.2d 985 (7th Cir.1988), the sole case cited by plaintiffs in support of this proposition, does not so hold. *See, Jones,* 856 F.2d at 996 ("As the custom was *department-wide and of long standing,* the jury was entitled to conclude that it had been consciously approved at the highest policy-making level for decisions involving the police department—the standard suggested by the recent plurality opinion in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).") (emphasis supplied).

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order: (1) defendants James O'Grady and Samuel Nolan's motions for summary judgment are GRANTED; (2) JUDGMENT is entered in favor of defendants and against plaintiffs on both counts of plaintiffs' complaint; (3) this case is DISMISSED in its entirety.