965 F.2d 348
 59 Fair Empl.Prac.Cas. (BNA) 201,
59 Empl. Prac. Dec. P 41,557
Alfred FIORENZO, David Ohlson, and Patrick Shannon,
Plaintiffs-Appellants,
v.
Samuel W. NOLAN, individually and officially, and Michael F.
Sheahan, in his official capacity, Defendants-Appellees.
 No. 91-1460.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 9, 1992.
Decided June 4, 1992.
 
 Mark L. LeFevour, argued, Callahan, Fitzpatrick, Lakoma & McGlynn, Oak Brook, Ill., John L. Gubbins, Chicago, Ill., for plaintiffs-appellants.
 John G. Levi, Scott E. Gross, Lisa A. Bartosic, Brian J. Gold, argued, Sidley & Austin, Edward F. Ryan, Steven M. Elrod, Mark A. Stang, Michael T. Benz, Burke, Bosselman & Weaver, Joel L. Greenblatt, Frost & Greenblatt, Chicago, Ill., for Samuel Nolan.
 John G. Levi, Scott E. Gross, Brian J. Gold, Sidley & Austin, Edward F. Ryan, Steven M. Elrod, Mark A. Stang, Michael T. Benz, Burke, Bosselman & Weaver, Richard G. Agin, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, Ill., for Michael F. Sheahan.
 Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 KANNE, Circuit Judge.
 
 
 1
 The plaintiffs, Alfred Fiorenzo, David Ohlson and Patrick Shannon, are law enforcement officers with the Sheriff's Police Department of Cook County, Illinois. In the fall of 1986, the plaintiffs served in the Office of Field Operations and were assigned to work at the Circuit Court of Cook County. Fiorenzo executed arrest warrants issued by the Circuit Court, and Ohlson and Shannon were assigned to criminal courtrooms. At that time, Sheriff Richard Elrod was running for re-election on the Democratic ticket, and Samuel Nolan served as the Chief of the Sheriff's Police Department. On November 6, 1986, Chief Nolan ordered that the plaintiffs be transferred to the Uniform Patrol Division.[1] The next day, James O'Grady, the Republican candidate whom the plaintiffs supported, was elected Sheriff.[2] The plaintiffs, who are white, were replaced by black police officers who had been serving in the Uniform Patrol Division.[3] Sheriff Elrod was out of town at the time the transfers were ordered, and he had not previously discussed them with Chief Nolan. He took no action when Chief Nolan informed him of the transfers after his return.[4]
 
 
 2
 On November 28, 1986, the plaintiffs filed a two-count complaint against Sheriff Elrod (for whom Sheriff O'Grady was later substituted), in his official capacity, and Chief Nolan, individually and officially.[5] The complaint alleged that the plaintiffs were transferred because of their political affiliation and race, in violation of the first and fourteenth amendments. See 42 U.S.C. § 1983. The district court granted the defendants' motions for summary judgment, 755 F.Supp. 801. The plaintiffs appeal and we affirm.
 
 
 3
 We review a grant of summary judgment de novo, La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 905 (7th Cir.1990), viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990). We must be satisfied that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); FED.R.CIV.PROC. 56(c); First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990).
 
 
 4
 "[M]unicipalities may be held liable under § 1983 only for acts which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.' " St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing Pembaur v. Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986)). "Only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." Id. (quoting Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300). Whether an official has final policymaking authority is a question of state law. Id. The challenged action must have been taken pursuant to a municipal policy. Id. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300.
 
 
 5
 The district court granted summary judgment in favor of Sheriff O'Grady because the plaintiffs failed to present evidence to support an official capacity claim against him. The court found that the plaintiffs presented no evidence that Sheriff Elrod or anyone else who had final policymaking authority ordered or approved the plaintiffs' transfers. Although Chief Nolan was delegated the discretion to make transfers within the Sheriff's Police Department for police officers, this does not establish that he was delegated final policymaking authority to set employment policy within the Department. As the district court properly noted, a municipality is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in question must possess final authority to establish municipal policy with respect to the challenged action. See Pembaur, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12.
 
 
 6
 Moreover, that Sheriff Elrod did not rescind the transfers is not sufficient to show that the transfers were "officially sanctioned or ordered." See Praprotnik, 485 U.S. at 130, 108 S.Ct. at 928 ("the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority"); Cygnar v. Chicago, 865 F.2d 827, 847 (7th Cir.1989) (official with final policymaking authority must actually have participated in the constitutional wrongdoing; failure by policymaking official to take corrective action is insufficient in and of itself to show § 1983 liability). Sheriff Elrod was out of town at the time the transfers were ordered and was informed of the decisions after they had occurred. We agree with the district court that the evidence is insufficient to raise a genuine issue of material fact whether Sheriff Elrod delegated to Chief Nolan final authority to establish policy with respect to the plaintiffs' transfers.
 
 
 7
 Alternatively, the plaintiffs assert that the district court erred in finding that Sheriff Elrod did not ratify their transfers. The district court found that Sheriff Elrod "simply went along with" the transfers rather than approving them. See Praprotnik, 485 U.S. at 130, 108 S.Ct. at 927. As we noted, the mere failure to revoke the transfers is insufficient to show that Sheriff Elrod participated in the alleged constitutional wrongdoing. See id. 485 U.S. at 127, 108 S.Ct. at 926 (ratification requires the authorized policymaker to approve a subordinate's decision and the basis for it). The trial court properly granted summary judgment in favor of Sheriff O'Grady.[6]
 
 
 8
 The district court also granted summary judgment in favor of Chief Nolan, in his individual and official capacities. The court found Chief Nolan was protected individually under the doctrine of qualified immunity. Under this doctrine, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Doe v. Bobbitt, 881 F.2d 510, 511 (7th Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990). Thus, an official's entitlement to qualified immunity "focuses on the objective legal reasonableness" of his acts. Harlow, 457 U.S. at 819, 102 S.Ct. at 2739; Auriemma v. Rice, 910 F.2d 1449, 1452 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).
 
 
 9
 The plaintiffs allege that they were transferred because of their political affiliation and race, in violation of their first and fourteenth amendment rights. On appeal, they claim that the district court considered Chief Nolan's state of mind with respect to the transfers in a manner inconsistent with the objective analysis of Harlow. We disagree. As we have held, "Harlow merely states that intent must not be evaluated or weighed through a factual inquiry...." Rakovich v. Wade, 850 F.2d 1180, 1210 (7th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Here, the alleged constitutional violation necessarily involves state of mind--i.e., discriminatory intent. See Auriemma, 910 F.2d at 1453 (racial discrimination claim). In Wade v. Hegner, 804 F.2d 67 (7th Cir.1986), we held that Harlow requires the district court to conduct a two-part analysis when state of mind is at issue: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question? Id. at 70. Intent is relevant to the first inquiry. Id.; Auriemma, 910 F.2d at 1453. Therefore, at the summary judgment stage, the district court properly considered whether the plaintiffs factually supported their allegations as to Chief Nolan's state of mind. See Polenz v. Parrott, 883 F.2d 551, 554 (7th Cir.1989).
 
 
 10
 In his deposition, Chief Nolan stated that he did not know the political affiliation or race of the plaintiffs or the political affiliation of the black police officers prior to the transfers. Because no evidence was presented to rebut that testimony, no constitutional violation was proven. The district court rejected the plaintiffs' suggestions that racial discrimination can be inferred from the transfer of three black police officers for three white officers and that Chief Nolan ordered the transfers in order to avoid losing his position as a result of the pending change in the administration. In fact, there was evidence that the plaintiffs were transferred due to their low performance. The district court properly determined that Chief Nolan was not liable in his individual capacity.[7]
 
 
 11
 The district court found that Chief Nolan was not liable in his official capacity because the plaintiffs failed to establish that he had final policymaking authority under state law with respect to their transfers or that he was acting pursuant to a custom or practice in the Sheriff's Office based on racial or political discrimination.[8] Under Illinois law, the sheriff has the final policymaking authority for the type of transfers at issue in this case. See ILL. ANN.STAT. ch. 125 § 51 et seq. (Smith-Hurd 1967).[9] As we have found, the delegation of discretion to Chief Nolan to make low-level transfers within the Department and Sheriff Elrod's failure to rescind the plaintiffs' transfers are insufficient to demonstrate that Chief Nolan was delegated final policymaking authority to set employment policy in the Sheriff's Police Department. The district court correctly granted summary judgment in favor of Chief Nolan in his official capacity.
 
 
 12
 The judgment of the district court is AFFIRMED.
 
 
 13
 CUDAHY, Circuit Judge, concurring in part and dissenting in part.
 
 
 14
 I agree with the majority's analysis and disposition of the claims against both defendants in their official capacities. I disagree, however, with the court's conclusion that Chief Nolan is protected individually by the doctrine of qualified immunity.
 
 
 15
 The majority agrees with the district court that there was insufficient evidence of Chief Nolan's intent to transfer and replace the officers on the basis of their race and political association. Intent is difficult to prove, and, not surprisingly, Chief Nolan left no record of what he was thinking when he replaced three white officers with three black officers two days after the election for Cook County Sheriff. In my view, however, there was sufficient circumstantial evidence to create a genuine issue of material fact as to Nolan's intent. Most obvious is the sheer temporal proximity of the action to the racially divided election. In addition, Nolan had met with the black officers several times prior to the election and testified that he decided to "give them a feeling of upward mobility." Nolan's mere assertion that he did not know the white officers does not resolve all doubt as to his state of mind. I believe that the subtle issue of Nolan's motivation in taking the action in question should be resolved by the finder of fact. To that extent, I respectfully dissent.
 
 
 
 [1]
 The effective date of the order was November 9, 1986. The transfers were lateral transfers, and they did not affect the plaintiffs' compensation, benefits or rank. According to the plaintiffs, however, the positions were less prestigious than their previous positions
 
 
 [2]
 Although the plaintiffs assert that they "supported O'Grady during the campaign," they do not explain the extent of their support--i.e., did they merely vote for O'Grady in the election or did they conduct overt acts to support him prior to the election
 
 
 [3]
 A fourth black police officer was due to be transferred to replace a fourth white police officer, but at the request of the black officer the transfer order was rescinded
 
 
 [4]
 Officer Fiorenzo was injured before the effective date of his transfer. He was transferred to another position when he returned from medical leave, and he never served a day in the Uniform Patrol Division. Ohlson and Shannon were transferred back to their previous positions after they had served less than four months in the Uniform Patrol Division
 
 
 [5]
 Michael F. Sheahan defeated O'Grady in the 1990 election. He was substituted as a defendant-appellee pursuant to Federal Rule of Civil Procedure 25(d)(1) and Federal Rule of Appellate Procedure 43(c)
 
 
 [6]
 As the district court noted, the plaintiffs did not allege in their complaint that the Sheriff's Office had a policy, custom, or practice to discriminate for racial or political reasons and that they were transferred pursuant to such a policy
 
 
 [7]
 Because there was no constitutional violation, the second part of the Wade analysis need not be considered
 
 
 [8]
 The plaintiffs have not appealed this latter issue
 
 
 [9]
 As the district court noted, the Illinois General Assembly repealed this section effective January 1, 1990, and replaced it with a similar provision, ILL.ANN.STAT. ch. 34 p 3-7001 et seq. (Smith-Hurd 1990 Supp.). The new provision is not relevant to the determination of whether state law vested Chief Nolan with final policymaking authority for transfers in the Sheriff's Police Department in November 1986