977 F.2d 585
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Betty A. LAWS, Plaintiff-Appellant,
v.
Dewey WHITE, in his Official Capacity as Trustee of the Town
Board of Rockville, as Chief of Police, and
Individually, Defendant-Appellee.
 No. 91-2572.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 21, 1992.*
Decided Sept. 29, 1992.
 
 Before CUMMINGS, POSNER, and MANION, Circuit Judges.
 
 ORDER
 
 1
 In this case brought under 42 U.S.C. § 1983, plaintiff Betty A. Laws appeals from an adverse summary judgment. The district court granted summary judgment in favor of defendant Dewey White because it found no genuine issue of fact regarding White's involvement in the alleged police harassment of which Laws complained. On appeal, Laws argues that the district court erroneously denied her the reasonable inferences to which she was entitled as the non-moving party. We affirm.
 
 
 2
 * In 1981, Laws filed suit in state court against her neighbors and officials of the town of Rockville, Indiana to enforce local zoning ordinances. White, a member of the town board at the time, was a named defendant. In April of 1982, while the suit was pending, White resigned from the board and was appointed chief of police. In the summer and fall of 1982, police officers Charles Bollinger and Jack Shannon confronted Laws while she was taking photographs of her neighbors' property to document her allegations of zoning violations. The officers told Laws to stop taking photographs because she was trespassing and she was bothering her neighbors. Laws apparently continued taking pictures in each case and in neither case did the officers interfere.
 
 
 3
 Laws filed suit under 42 U.S.C. § 1983 against Rockville officials, including White in both his individual and official capacities. In her Second Amended Complaint, Laws claimed that White
 
 
 4
 harassed and intimidated [her] either directly or through his agents and employees and sought to prevent her from exercising her rights under the First Amendment and has violated her rights to due process and equal protection and has abridged her immunities under [the] First Amendment and Fourteenth Amendment.
 
 
 5
 R.Doc. 9, at 5.
 
 
 6
 White moved for summary judgment and submitted his affidavit along with affidavits from Officers Bollinger and Shannon. In his affidavit, White stated that he never ordered either Bollinger, Shannon, or any other law enforcement officer to contact, confer with, or order Laws to cease taking pictures for evidence in any lawsuit or for any other purpose. He also denied personally ordering Laws to cease taking pictures.
 
 
 7
 The affidavits of Bollinger and Shannon are consistent with White's sworn statement. Bollinger stated that on August 16, 1982, he went to Laws' residence in response to a call received through the Sheriff's Dispatcher's Office, not in response to any orders from White. Laws' neighbors complained to Bollinger that Laws was standing in their yard taking pictures of them. He told Laws that if she were on the neighbors' property taking pictures of them, she would be trespassing. Bollinger also stated that, at the time he received the call, he was unaware of any lawsuit Laws had filed against the Town of Rockville, and that at no time did White or any other town official order or direct him to contact Laws with respect to her picture-taking or any other matter.
 
 
 8
 Officer Shannon's statement was similar to Bollinger's. He stated that on October 24, 1982, he went to Laws' residence in response to a call received by the Sheriff's Dispatch Office, not in response to any orders or directives from White. The neighbors complained that Laws was taking pictures of them as they went about their property, and they wanted her to stop. Shannon told Laws that she was harassing her neighbors and that she should cease taking pictures of them. Finally, like Bollinger, Shannon stated that, at the time he received the call, he was unaware of any lawsuit by Laws against the Town of Rockville, and that at no time did White or any town official order or direct him to contact Laws with respect to her picture-taking or any other matter.
 
 
 9
 In her response to White's motion for summary judgment,[1] Laws included her own affidavit. In it, she stated that White was actively involved in town governance and that he was aware of her zoning suit. With regard to Officer Bollinger, she stated that 1) although he told Laws that he received a complaint of her trespassing, the records of the dispatcher do not reflect any such complaint, 2) he questioned her about pictures she had taken of town equipment being used on a town official's private property, and 3) the pictures she took on August 16 show no people and show that she was on her own property when she took them. With regard to Officer Shannon, Laws stated that 1) the records of the dispatcher do not reflect any trespassing complaints or allegations for October 24, 1982, and 2) that he was listed as a witness for her neighbors in a case in which they filed against the Board of Zoning Appeals.
 
 
 10
 In opposition to White's motion for summary judgment, Laws argued that one could rationally infer that White had directed Bollinger and Shannon to harass her in retaliation for her involvement in town affairs, including her efforts to get the zoning laws enforced. The district court rejected this argument, stating that "this inference is not strong enough to rebut the sworn statements of White and officers Bollinger and Shannon that White did not, in any way, direct the officers to order Laws not to take pictures." R.Doc. 35, at 3. The district court granted summary judgment in favor of White. Laws appeals.
 
 II
 
 11
 We review a grant of summary judgment de novo. We view the record and all reasonable inferences drawn from it in the light most favorable to the non-moving party. Fiorenzo v. Nolan, 965 F.2d 348, 350 (7th Cir.1992). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 12
 Laws sued White in both his individual capacity and in his official capacity as chief of police and Trustee of the Town Board of Rockville. The distinction determines what the plaintiff must prove:
 
 
 13
 [T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required of an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.
 
 
 14
 Kentucky v. Graham, 473 U.S. 159, 166 (1985) (emphasis in original) (citations omitted).
 
 
 15
 We turn first to Laws' individual-capacity suit. Laws does not claim that White personally harassed her or that a failure on his part to supervise the officers caused the harassment.[2] Instead, she claims that he bears responsibility because he directed the officers to harass her in retaliation for her zoning suit. The evidence uniformly contradicts this claim. White supported his motion for summary judgment with his own affidavit and those from the two officers. All three disavowed any communication or instructions from White to the officers regarding Laws. Although we view the record in the light most favorable to the non-moving party, we do not simply close our eyes to all evidence unfavorable to the non-movant. To resist a properly made motion for summary judgment, the adverse party
 
 
 16
 may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
 
 
 17
 Fed.R.Civ.P. 56(e). In this case, Laws has not come forward with any evidence controverting the sworn statements of White and the officers that White did not direct them to harass or otherwise contact Laws.
 
 
 18
 Laws attempts to liken this case to Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). In Adickes, the plaintiff, a white woman in the company of blacks, sued a restaurant, alleging that its refusal to serve her and her subsequent arrest were the product of a conspiracy with the police. The Supreme Court reversed a grant of summary judgment in favor of the restaurant because it failed "to foreclose the possibility that there was a policeman in the Kress store while petitioner was awaiting service, and that this policeman reached an understanding with some Kress employee that petitioner not be served." Id. at 157. Unlike Kress, however, White did show the absence of a genuine issue as to any material fact because the affidavits he submitted completely foreclosed the possibility that White was involved with the alleged harassment of Laws.
 
 
 19
 Laws attempts to salvage a genuine issue of material fact by arguing that the totality of the circumstances supports an inference that White did indeed direct the officers to harass Laws. The "inference" that Laws would have us draw amounts to mere speculation. Laws cites White's status as chief of police, his interest in the zoning litigation, his active involvement in Rockville government, and Laws' 'various conflicts with that government. Although not inconsistent with Laws' claim that White directed the officers to harass her, these facts would not enable a reasonable jury to return a verdict for Laws. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the district court properly granted summary judgment in favor of White in his individual capacity.
 
 
 20
 With regard to Laws' official-capacity suit, since there is no evidence connecting White to the alleged harassment, there is no basis upon which to conclude that the alleged harassment was part of an official "policy or custom." Thus, there can be no official-capacity liability. Graham, 473 U.S. at 166. The district court properly granted summary judgment to White in his official capacity.
 
 III
 
 21
 For the foregoing reasons, the order of the district court granting summary judgment to White is AFFIRMED in all respects.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs and the record
 
 
 [1]
 Initially, Laws failed to respond to White's motion, and the district court granted summary judgment in favor of White. Laws successfully moved for relief from judgment under Rule 60(b), and the district court allowed her to respond to White's motion
 
 
 [2]
 Before the district court, Laws clearly alleged affirmative misconduct on White's part, variously describing his actions as "willful," "intentional," and "more than mere acquiescence."