Jerome POLENZ and Donna Polenz,
Plaintiffs–Appellees,

v.

Thomas PARROTT and Russell Borland,
Defendants–Appellants.

No. 88–2895.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1989.

Decided Aug. 22, 1989.

Robert N. Meyeroff, Milwaukee, Wis., for Jerome Polenz and Donna Polenz, plaintiffs-appellees.

Joseph D. McDevitt, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for Thomas Parrott and Russell F. Borland, defendants-appellants.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiffs Jerome and Donna Polenz brought this action under 42 U.S.C. § 1983 alleging that the defendants, an alderman and an electrical inspector for the City of Oak Creek, Wisconsin, deprived them of their right to a fair hearing on their applications for a tavern license and caused them to be arbitrarily and unreasonably denied an occupancy permit for their property. The issues on appeal are whether the plaintiffs were deprived of property or liberty under the fourteenth amendment, if so whether plaintiffs were denied due process, and if so whether the defendants are entitled to qualified immunity.

I.

In June 1984, the plaintiffs purchased two adjacent buildings in Oak Creek, one of which had a tavern on the first floor and an apartment on the second floor. That building had been a licensed tavern premises for over forty years, but the previous owner had surrendered the license in 1983. Upon purchasing the property, the plaintiffs applied for a new license. Over the next two years, the Common Council of Oak Creek voted to deny plaintiffs' application seventeen times.

During that two-year period, defendant Thomas Parrott was the Chairman of the Licensing Committee of the Common Council and defendant Russell Borland was the electrical inspector for Oak Creek. Plaintiffs alleged that Parrott and Borland, for a variety of reasons not relevant to this appeal, conspired to prevent the issuance of the tavern license. Plaintiffs alleged that

Parrott, as Chairman of the Licensing Committee, presented false, scandalous, and irrelevant information to the Common Council in its hearings on the application, consistently voted to deny the license, and improperly influenced other council members to deny the license. Plaintiffs alleged that Borland refused to inspect the premises, used an inapplicable building code to determine that there were violations on the premises, refused to issue an occupancy permit after plaintiffs corrected the violations cited, improperly applied to the tavern building purported code violations existing in the other building, and continuously, arbitrarily, unreasonably and in conspiracy with Parrott denied or caused the Common Council to deny an occupancy permit for the tavern building.

The case proceeded to trial in August 1988 without a determination as to whether plaintiffs had stated a claim under § 1983. In particular, the question of whether plaintiffs had a constitutionally protected property or liberty interest in either a tavern license or an occupancy permit was never addressed. The jury returned a special verdict finding that both defendants, either individually or in conspiracy, had "deprived[d] the plaintiffs of their right to a fair hearing on their applications for a liquor license"[1] and had "cause[d] the plaintiffs to be arbitrarily and unreasonably denied occupancy permits." The jury further found that the defendants had acted in willful, wanton, or reckless disregard of plaintiffs' rights and awarded punitive damages.

In a motion for directed verdict, on which the district court reserved judgment, and in motions after verdict, the defendants challenged the sufficiency of the evidence and asserted their claim of qualified immunity. In response to the post-trial motions, the district court held that the verdict and punitive damages award were supported by the evidence. Moving on to the qualified immunity issue, the court stated:

> It would be anomalous for this court to hold that the defendants are shielded from § 1983 liability because their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," yet at the same time hold that there was credible evidence to support a jury finding of punitive damages. "Consequently it would be illogical to extend good faith immunity to a government official who has intentionally violated an individual's constitutional rights."

(citations omitted). The district court accordingly denied defendants' motions and entered judgment for plaintiff. 694 F.Supp. 599.

On appeal, the defendants contend that the district court inappropriately relied on the jury's findings of willfulness to determine the qualified immunity issue and that under the correct analysis the defendants are entitled to such immunity.

## II.

The record in this case reflects several misunderstandings of the law concerning both qualified immunity and the establishment of constitutionally protected interests under the due process clause of the fourteenth amendment. We will begin by briefly outlining the legal framework for a qualified immunity analysis. Although this ground has been covered in previous opinions of this court, it is apparent from this case that further amplification is appropriate.

■ Prior to the Supreme Court's decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a determination of whether a public official was entitled to immunity under the qualified immunity doctrine required an inquiry into the official's subjective belief as to the lawfulness of his/her actions. Consequently, qualified immunity was often referred to as good faith immunity. In *Harlow,* the Supreme Court eliminated the subjective or good faith element from the qualified immunity analysis and held that "government

---

1. The record and briefs alternately refer to the license as a tavern license and a liquor license. It appears from our reading of the Wisconsin statutes pertaining to alcoholic beverages that, for purposes of this appeal, the terms may be interchanged.

officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. In *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Court refined the *Harlow* standard by holding that the alleged constitutional right must be "clearly established" in a particularized sense. The *Anderson* Court stated that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039. Thus, and as discussed in two recent opinions of this court, *Cleveland–Perdue v. Brutsche*, 881 F.2d 427 (7th Cir.1989) and *Doe v. Bobbitt*, 881 F.2d 510 (7th Cir.1989), a qualified immunity analysis entails a purely objective inquiry to determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented.

In *Wade v. Hegner*, 804 F.2d 67 (7th Cir.1986), we set out a two-step approach to the qualified immunity analysis. Under this approach, the court must ask "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Id.* at 70. In *Rakovich v. Wade*, 850 F.2d 1180 (7th Cir.1988), we further explained that where a particular state of mind (*e.g.*, intent, discriminatory motive, retaliatory motive) is an element of the alleged constitutional violation, and the qualified immunity issue arises at the summary judgment or directed verdict stage, in order to answer the step one inquiry, the court must determine whether the plaintiff has factually supported the allegations as to the state of mind element.[2] We made clear, however, that the defendant's subjective state of mind is not relevant to the determination of question two.[3] *Id.* at 1210–11.

The error in this case began at step one. At no time was a determination made as to whether the defendants' alleged (and later proven) conduct set out a violation of plaintiffs' constitutional rights. The error was compounded at step two. Assuming that the denial of a tavern license and an occupancy permit implicated constitutionally protected property or liberty interests under the fourteenth amendment (one of the issues that should have been determined at step one), the court concluded that the constitutional standards were clearly established at the time in question (the step two determination) solely on the ground that defendants had acted willfully (a state of mind consideration that is irrelevant to step two).[4] The confusion took a new turn on appeal to come full circle. Plaintiffs argue that the willful, malicious, and conspiratorial nature of defendants' acts dictates a finding of a constitutional violation (*i.e.*,

**2.** It should be apparent that we are using the phrase "state of mind" very loosely and generally here and that we intend no reference to any particular substantive area of law.

**3.** The alleged state of mind might, of course, be a component in the *objective* inquiry under *Harlow*. For example, the qualified immunity question might be whether at the time in question it was clearly established that the alleged constitutional violation could arise from "reckless" rather than "intentional" conduct. But the defendant's subjective good or bad faith is not part of the inquiry.

**4.** It appears that the court erroneously relied on our discussion in *Rakovich* of a case (*McKinley v. Trattles*, 732 F.2d 1320 (7th Cir.1984)) in

which the jury had been erroneously instructed to determine whether the defendants had acted in good faith. We explained in *Rakovich* that because the *Trattles* defendants had not objected to the instructions the erroneous standard became the law of the case. The *Trattles* court thus reviewed the jury's determination of good faith and agreed with the district court that the jury's award of punitive damages negated the possibility of a finding of good faith. *See Rakovich*, 850 F.2d at 1202. We reemphasize here that the good faith standard applied in *Trattles* is *not* the correct standard and was applied in that case only because it had become the law of the case.

the step one question). The problem, of course, is that the defendants' state of mind has nothing to do with whether the plaintiffs have asserted constitutionally protected property or liberty interests under the fourteenth amendment.

■ The determination of entitlement to qualified immunity is a question of law which we review *de novo. Rakovich,* 850 F.2d at 1204. As such, we will begin with step one.

## III.

Plaintiffs alleged in their complaint violations of both the fifth and fourteenth amendments. The references to the fifth amendment hint at a "takings" violation under the just compensation clause. The complaint also refers to the equal protection clause of the fourteenth amendment. It is clear from the record, however, that the trial of the case was limited to plaintiffs' theories under the due process clause. Our discussion is therefore similarly limited.

■ In any § 1983 action, the plaintiff must prove two essential elements: (1) that "the conduct complained of was committed by a person acting under color of state law"; and (2) that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Only the second element is at issue here, for the defendants concede that their actions were taken under color of state law. To satisfy the second element in a § 1983 action based on due process, the plaintiff must demonstrate: (1) that the claimed interest is a protected property or liberty interest under the fourteenth amendment; (2) that "the alleged loss ... amounted to a deprivation"; and (3) that the deprivation was without due process of law. *Id.* at 536–37, 101 S.Ct. at 1913–14. At issue here

are the first and third requirements; the defendants do not dispute that a deprivation occurred.

## A.

■ The first question then is whether the plaintiffs' claimed interests are constitutionally protected property or liberty interests. Property interests are not created by the Constitution but are "defined by existing rules or understandings that stem from an independent source such as state law" and arise only where the plaintiff demonstrates a "legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Liberty interests, on the other hand, may flow directly from the fourteenth amendment or, like property interests, be created by state law. *Kentucky Department of Corrections v. Thompson,* — U.S. —, —, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).

As to the tavern license, the plaintiffs have asserted both a property and a liberty interest. They claim a property interest in the license itself and a fundamental liberty interest in the right "to work for a living in the common occupations of the community." *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). Both of these theories were addressed and rejected by this court in *Scott v. Village of Kewaskum,* 786 F.2d 338 (7th Cir.1986). As fully explained in that opinion, under Wisconsin law a liquor license is a privilege not a right. The Wisconsin statute governing the sale of alcoholic beverages provides only that municipal governments "may" issue liquor licenses; at no point does the statute provide substantive criteria under which a village or city "must" issue a liquor license. Consequently, plaintiffs cannot legitimately claim an entitlement to a liquor license.[5] *Compare Reed v. Village of Shorewood,* 704 F.2d 943, 948–49 (7th Cir.1983) (substantive criteria for revocation and renewal of liquor licenses in Illinois Liquor Control Act create a property

---

**5.** In *Scott,* as here, the application was for a new license. We express no opinion on wheth-

er an application for a renewal of an existing license might give rise to a property interest.

interest in an existing license). Similarly, because a license to sell liquor in Wisconsin is a privilege not a right, Wisconsin has "reverse[d] the presumption of free entry" and "diminishe[d] or extinguishe[d] the 'liberty interest' ... in pursuing that occupation." *Scott*, 786 F.2d at 341.

Plaintiffs attempt to sidestep the *Scott* decision by citing Wisconsin cases in which the courts reviewed decisions on liquor licenses under an "arbitrary and capricious" standard. These cases miss the mark, for they were decided in the context of judicial review of the merits of an administrative decision. While it is true that appellate review of an administrative decision may be based on an arbitrary and capricious standard, and that a substantive due process analysis also looks to see whether a governmental action was arbitrary or irrational, the use of the same term ("arbitrary") does not automatically transform the interest at stake in a case of judicial review into a property or liberty interest under the due process clause.

■ Surprisingly, the parties devoted the bulk of their appellate arguments to the question of the tavern license—an issue which was definitively decided in defendants' favor in *Scott*. The more interesting issue involves the occupancy permit. There are three theories that could potentially support a claim of entitlement to an occupancy permit. First, as touched upon above, where a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit, an applicant who has met those criteria might assert a legitimate claim of entitlement to the permit. *See, e.g., Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986) (under applicable statute, occupancy permit must issue where applicant has satisfied all requirements); *Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983) (plaintiff "enjoyed an entitlement to the issuance of a [building] permit upon presentation of an application and plans showing a use expressly permitted under the then-current

zoning ordinance"). This theory is of no avail to the plaintiffs in this case, however, for they have not presented us with any Oak Creek ordinance or regulation dealing with occupancy permits. We are therefore prevented from conducting a "substantive criteria" analysis.

■ Second, a property owner may challenge on due process grounds a zoning or land use ordinance affecting his/her land. The ordinance might be attacked either on its face or as applied. One of the earliest cases is *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928), where the plaintiff, complaining of the denial of a building permit, asserted that application to his property of the otherwise valid zoning ordinance at issue was irrational. The Court held that the application of the ordinance to plaintiff's land violated the fourteenth amendment, stating:

> The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.

*Id.* at 188, 48 S.Ct. at 448. Because the property interest in such a case is apparent,—it is the ownership interest in the land itself—the interest is often assumed without discussion. *See, e.g., Scudder v. Town of Greendale, Ind.*, 704 F.2d 999, 1002 (7th Cir.1983).[6] Here again, however, the plaintiffs did not proceed on the basis of an allegedly unconstitutional ordinance affecting or applied to their property. As stated, they have not presented or cited any zoning ordinance or land use regulation.

■ The third theory is related to the second. The attribute of ownership at issue in the zoning cases is the right of use—one of the bundle of rights attendant to ownership under the laws of property in all states. As we stated in *Reed v. Village*

---

**6.** For a discussion of the development of the law regarding protected property interests in the context of zoning and land use decisions, see

*RRI Realty Corp. v. Inc. Village of Southampton*, 870 F.2d 911, 914–18 (2d Cir.1989).

*of Shorewood,* 704 F.2d 943 (7th Cir.1983), "a property right is not bare title, but the right of exclusive use and enjoyment." *Id.* at 949. It is this right that the plaintiffs claim they were deprived of, not by the administration of a particular ordinance but by the bare acts of the defendants in denying them an occupancy permit. We note that the defendants have not cited in their briefs any ordinance or regulation governing the issuance of occupancy permits. Nor did either party cite any cases dealing with occupancy permits. Nevertheless, we find plaintiffs' theory based on the right to exclusive use and enjoyment to be meritorious on the particular facts of this case.

Our research revealed that occupancy permits come in all shapes and sizes. We have read cases (not necessarily due process cases or Wisconsin cases) mentioning certificates of occupancy for a particular use, certificates of occupancy for a nonconforming use, and plain old certificates of occupancy. What became clear is that "occupancy" is not a magic word that automatically gives rise to the property right of use and enjoyment. For example, a valid ordinance restricting the use of property to, say, residential use might extinguish the right to an occupancy permit for use of the land as a factory.[7] Or, more to the issue at hand, where under state law there is no entitlement to a liquor license, there is clearly no right to an occupancy permit for use of the premises as a tavern. In this case, however, the plaintiffs claimed that without an occupancy permit they could not occupy the premises for *any use* for a period of eighteen months, and the defendants conceded that point by silence in both their briefs and at oral argument. The plaintiffs were not only unable to occupy the premises for use as a tavern, they were unable to occupy the premises for any retail business or to rent out the apartment on the second floor.[8] Under those circumstances, and absent any argument from the defendants on that point, we find that plaintiffs were indeed deprived of a proper-

ty interest as a result of the denial of the occupancy permit. As we stated in *Reed,* "[i]f the state prevents you from entering your house it deprives you of your property right even if the fee simple remains securely yours." 704 F.2d 943.

## B.

Having found a property interest, we now address whether the deprivation was without due process. Plaintiffs premised their claim as to the occupancy permit on a violation of substantive rather than procedural due process. In other words, the plaintiffs did not complain that the decision-making process lacked adequate procedural protections (notice and an opportunity to be heard); rather plaintiff argued that the decision itself was fundamentally flawed (arbitrary and irrational).

In the last few years, several opinions of this court have expressed disapproval or reservations concerning the application of a substantive due process analysis to a claim based on a state-created property interest. *See Easter House v. Felder,* 879 F.2d 1458, 1481 n. 1 (7th Cir.1989) (Cudahy, J. concurring in part and dissenting in part); *Kauth v. Hartford Insurance Co.,* 852 F.2d 951, 956–58 (7th Cir.1988); *Jones v. Thieret,* 846 F.2d 457, 463 (7th Cir.1988); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 463–66 (7th Cir.1988); *Akins v. Bd. of Gov. of State Colleges & Univ.,* 840 F.2d 1371, 1376, 1378 (7th Cir.1988); *Chicago Bd. of Realtors, Inc. v. City of Chicago,* 819 F.2d 732, 744–45 (7th Cir.1987) (separate majority opinion); *Illinois Psychological Association v. Falk,* 818 F.2d 1337, 1342 (7th Cir.1987); *Gumz v. Morrissette,* 772 F.2d 1395, 1405–06 (7th Cir.1985) (Easterbrook, J., concurring), *overruled by Lester v. City of Chicago,* 830 F.2d 706 (7th Cir.1987). However, despite the reservations expressed in those opinions as to whether or to what extent a right of substantive due process *should* apply to a state-created property interest, the decisions did not turn on that issue. For exam-

---

**7.** The hypothetical assumes a constitutional ordinance constitutionally applied.

**8.** Defendants have made no argument that the use of the premises for residential rental purposes was a restricted use under any ordinance.

ple, in *Coniston*, 844 F.2d at 466, and *Illinois Psychological Assoc.*, 818 F.2d at 1337, the court found that there had been no deprivation of property; in *Akins*, the court remanded the question to the district court, 840 F.2d at 1378; and in *Jones*, the reference is *obiter dictum*.

■ Most importantly, in *Kauth*, after expressing concern over the lack of specific guidance from the Supreme Court, we acknowledged that "[n]evertheless, the Court *has* analyzed the deprivation of a property interest as a violation of substantive due process." 852 F.2d at 956–57 (emphasis in original). We went on to hold that "in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." *Id.* at 958. Although stated in the negative, the standard implies that a substantive due process claim based on a state-created property interest is cognizable where a plaintiff claims either a violation of some other substantive constitutional right or that the state law remedies are inadequate.[9]

At the same time, in the specific context of local land use decisions, we have repeatedly recognized that property interests may invoke the protection of substantive due process. *See Harding v. County of Door*, 870 F.2d 430, 431 (7th Cir.1989) (zoning decision revoking a building permit denies substantive due process if it is invidious or irrational; held, the decision was not irrational); *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987) (plaintiff developers complained of the city's rejection of their site-plans and housing proposals; "in order to prevail on a substantive due process claim, plaintiffs must allege and prove that the denial of their proposal is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare"; held, the

denial was not unreasonable); *Albery v. Reddig*, 718 F.2d 245, 251 (7th Cir.1983) (denial of a zoning variance; "[t]o prevail on [substantive due process] theory, plaintiffs must allege and prove that the [ordinance] is arbitrary and unreasonable or that its application bears no substantial relation to the public health, safety or morals"; held, denial was not unreasonable); *Scudder v. Town of Greendale, Ind.*, 704 F.2d 999, 1002 (7th Cir.1983) (denial of building permit; "enforcement of an otherwise valid zoning ordinance violates the Constitution ... if the decision of the particular zoning body is arbitrary"; held, decision was not arbitrary); *Barbian v. Panagis*, 694 F.2d 476 (7th Cir.1982) (grant to plaintiffs' neighbors of a variance from noise ordinance; recognized § 1983 action based on substantive due process; held, grant of variance was reasonable); *see also, Coniston*, 844 F.2d at 467 (despite reservations, opinion recognized that a zoning decision "can be said to deny substantive due process only if it is irrational").

■ What is apparent from these cases is that a plaintiff bears a very heavy burden in a substantive due process action attacking a decision of local zoning officials. And rightly so, for the federal courts are not zoning boards of appeal and will not overturn merely erroneous decisions. The plaintiff must overcome a presumption that the decision was reasonable and prove that the decision was irrational. However, the fact that no decision of this court has found a plaintiff to have met that burden, does not mean that the right is not cognizable. The interesting aspect of this case is that the defendants do not appeal the jury's finding that the denial of the occupancy permit was arbitrary and unreasonable. Therefore, the plaintiffs have overcome the first hurdle.

■ As indicated in *Kauth*, however, in addition to showing that the decision was arbitrary and irrational, the plaintiff must also show either a separate constitutional violation or the inadequacy of state law

---

9. Applying the standard in *Kauth*, we found that the plaintiff had not disputed the adequacy of state remedies nor alleged a separate constitu-

tional violation and, thus, had failed to state a claim.

remedies. Here, no other provision of the Constitution is at issue, and no inquiry was made below as to the adequacy of state remedies. However, because *Kauth* was released less than two weeks before this case went to trial, and apparently neither the parties nor the court were aware of the decision, we believe the plaintiffs should have the opportunity to make a showing that the state law remedies were inadequate. The case must therefore be remanded for a determination on that issue.

In the event that on remand it is determined that the state law remedies were inadequate, the question of qualified immunity remains. So we move on to step two—whether the constitutional standards were clearly established at the time in question.

## IV.

■ For purposes of qualified immunity, it is not enough to assert that a broad or abstract right, such as the right to due process or the right to exclusive use and enjoyment of one's land, is clearly established. Rather, the court must frame the right in the context of the particular action. Here, we believe the inquiry consists of two parts. The first question is whether it was clearly established in 1984 that under the due process clause property owners had a right to be free from arbitrary and irrational decisions of local zoning or land use officials on applications for permits relating to land use. The second question is whether in light of pre-existing law a reasonable official should have known that the available state law remedies were inadequate. *See Birkenholz v. Sluyter*, 857 F.2d 1214, 1217 (8th Cir.1988).

As to the first question, despite the reservations expressed in our recent opinions, we believe that in 1984 the right as stated above was clearly established in this circuit. In the two years preceding the denial of the occupancy permit in this case, three opinions from this court clearly recognized that property owners have the right to be free from arbitrary and irrational zoning

decisions. *Barbian v. Panagis*, 694 F.2d 476 (7th Cir.1982); *Scudder v. Town of Greendale*, 704 F.2d 999 (7th Cir.1983); *Albery v. Reddig*, 718 F.2d 245, 251 (7th Cir.1983). The Fourth Circuit was in accord. *See Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983). We do note one opinion from this court in 1983 which looks in the opposite direction. In *Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983), we held that a county employee's substantive due process claim based on an alleged property interest in accrued time off was not cognizable. The case, however, was based on a novel theory of property and did not involve a land use decision. We believe the closely analogous cases cited above control the issue.

As to the second question, we have already indicated that we must remand for an examination of the adequacy of state law remedies. We therefore must also remand on the question of whether (assuming a determination that the remedies were inadequate) a reasonable official should have known that the remedies were inadequate. Should the plaintiffs prevail on these issues, a new trial on damages will be required, for the jury's damages award did not differentiate between the damages resulting from the denial of the tavern license and the damages resulting from the denial of an occupancy permit.[10]

## V.

For the reasons stated herein, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.

■

---

10. We note that defendant Borland's brief argument that he is entitled to absolute immunity is without merit.