**Pablo PIRELA, Plaintiff,**

v.

**VILLAGE OF NORTH AURORA, Edward A. Kelley, individually and as an agent of the Village of North Aurora, Village of Sugar Grove, and James Quist, individually and as an agent of the Village of Sugar Grove, Defendants.**

No. 95 C 4048.

United States District Court,
N.D. Illinois,
Eastern Division.

May 30, 1997.

Claudia Oney, Danielle Lisa Weiss, Claudia Oney, P.C., Chicago, IL, Patricia Kiper Rummer, Kevin M. Brill & Associates, Chicago, IL, for Pablo Pirela.

J. Marc Forkins, John M. Byrne, Hinshaw & Culbertson, Chicago, IL, for Village of North Aurora.

John M. Byrne, James M. Forkins, Jr., Hinshaw & Culbertson, Lisle, IL, for Edward A. Kelley.

Margo Lyn Ely, Dekalb, IL, Michael William Condon, Michael D. Bersani, Hervas, Sotos & Condon, P.C., Itasca, IL, for James Quist.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Pablo Pirela, has filed a third amended six-count complaint against defendants, Village of North Aurora, Edward A. Kelley, Village of Sugar Grove, and James Quist. Plaintiff's third amended complaint alleges two claims for constitutional violations including intentional deprivation of plaintiff's liberty interest (Count I) and intentional interference with plaintiff's liberty interest without due process of law (Count II) against defendant Kelley, and a third claim for race discrimination in violation of 42 U.S.C. § 1983 (Count III) against defendants Kelley, Village of Sugar Grove, and Quist. Plaintiff's third amended complaint also alleges three supplemental state claims, breach of contract (Count IV) and defamation (Count V) against defendants Kelley, Village of North Aurora, Village of Sugar Grove, and Quist, and intentional infliction of emotional distress (Count VI) against defen-

dants Kelley and Village of North Aurora. Defendant Kelley has filed a motion for summary judgment on Counts I, II, and III [1] and defendants Village of Sugar Grove and Quist have filed a motion for summary judgment on Count III pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendant Kelley's motion is granted in part and denied in part and defendants Village of Sugar Grove's and Quist's motion is denied.

### STATEMENT OF FACTS [2]

Plaintiff is of African–American and Hispanic descent. Plaintiff was employed as a police officer for defendant Village of North Aurora (North Aurora) from May 1984 until May 1986, when he was terminated for violation of various rules following a hearing in front of the Board of Fire and Police Commissioner of North Aurora. Defendant Kelley was the Chief of the North Aurora Police Department from 1980 until 1995. Defendant Kelley had recommended plaintiff's discharge. The Board's decision regarding plaintiff's termination was upheld by the Sixteenth Judicial Circuit for Kane County, Illinois. Plaintiff subsequently filed a civil lawsuit in federal court alleging employment discrimination claiming that defendant North Aurora denied him equal pay and promotions on the basis of his race. Defendant North Aurora and plaintiff reached a settlement agreement that discharged plaintiff's claims. Pursuant to that agreement, defendant North Aurora agreed to provide plaintiff's potential future employers with confirmation of employment with a neutral reference that would state, "On advice of counsel, we are unable to comment about the performance of Mr. Pirela."

In 1993, plaintiff submitted an application for a part-time police officer position with defendant Village of Sugar Grove (Sugar Grove). Defendant Quist has been the Chief of Police for the Sugar Grove Police Department since 1993. In September 1994, defendant Quist asked his police officers if they knew anyone who would be interested in working as a police officer for defendant Sugar Grove. One officer, Vincent Johnson a friend of plaintiff, informed defendant Quist that plaintiff was interested and his application was already on file. Shortly thereafter, defendant Quist reviewed plaintiff's application. Plaintiff had listed on his application that he had been previously employed by defendant North Aurora. Defendant Quist spoke with defendant Kelley about plaintiff at a 911–Board Meeting, defendants Quist and Kelley were both Board members. Defendants Quist and Kelley have talked with each other on several occasions, they are also members of the Kane County Chiefs of Police Association.

Defendants Quist and Kelley state that the only thing that defendant Kelley said was that he could not discuss plaintiff except to confirm that plaintiff had worked for defendant North Aurora. Plaintiff counters that Mr. Johnson stated in his deposition that, upon inquiring about the status of plaintiff's application, he was told by defendant Quist that defendant Kelley had told defendant Quist that plaintiff could not be trusted, defendant Kelley would not rehire plaintiff, and plaintiff had no good qualities. Defendant Quist states that he may have told Mr. Johnson that plaintiff had a bad work record. Defendant Quist also states that he spoke with a second former employer of plaintiff, Charles Budde who was the Chief of the Kane County Forest Preserve Police. Defendant Quist and Mr. Budde have known each other for twenty years. Plaintiff worked for Mr. Budde as a private investigator in the late 1980s until 1991. Defendant Quist states that Mr. Budde told him that he would not hire plaintiff again because plaintiff did not have a good work ethic and plaintiff would sometimes not show up for work or complete assignments. Mr. Budde in his deposition states that he does not remember ever having a conversation with defendant Quist about plaintiff. Mr. Budde

---

**1.** Defendant Kelley's motion for summary judgment is also submitted on behalf of defendant Village of North Aurora. Defendant Village of North Aurora, however, is not a defendant in Counts I, II, and III.

**2.** The following statement of facts comes from the parties' Local Rule 12(M) and (N) statements of material facts and accompanying exhibits.

stated in his deposition that the company liked plaintiff immensely although plaintiff did file his reports late a number of times. Defendant Quist decided not to consider plaintiff's application after his alleged conversations with defendant Kelley and Mr. Budde.

Defendant Quist notified Mr. Johnson of his decision not to consider plaintiff for employment. Mr. Johnson states that defendant Quist told him that Mr. Budde told him that plaintiff did not finish investigations, had a history of suing everybody, and had no good qualities. Mr. Johnson also states that defendant Quist told him that defendant Kelley had said that plaintiff could not be trusted, defendant Kelley would not rehire plaintiff, and plaintiff had no good qualities. Mr. Johnson states that defendant Quist told him that he was not hiring plaintiff because defendant Sugar Grove had too many problems in the past with lawsuits and they could not take a chance with plaintiff. Defendant Quist denies that he said that he would not hire plaintiff because plaintiff filed a lawsuit.

Defendant Quist's general procedure for hiring officers is to select candidates from the collection of applications on file with the department. Defendant Quist's preliminary background check is to call the last few places where a candidate has been employed. If defendant Quist gets favorable responses from previous employers, feels that the candidate is the right person for his department, and if the candidate's background and work ethic is acceptable, he will inquire further about the candidate. Further inquiry consists of starting a formal background check, meaning defendant Quist will go out and interview people personally and not over the telephone.

In January 1995, defendant Quist hired Officer Tom Barna, a Caucasian, as a full-time police officer for defendant Sugar Grove. In April 1995, defendant Quist hired Officer William Perkins, a Caucasian, as a part-time police officer for defendant Sugar Grove. Plaintiff presents evidence that both officers clearly had numerous problems with their prior employment and had filed lawsuits against their former employer. Mr. Barna had been terminated from a prior

police job. Mr. Perkins had been terminated from one prior police job and termination was sought from another prior police job. Defendant Quist denies that he knew any of this when he hired the officers. Defendant Quist did not speak with the police chief where Mr. Barna previously worked. Defendant Quist did not speak with the two police chiefs from the two police departments where Mr. Perkins had previously worked although Mr. Perkins listed the two as his former supervisors. Defendant Quist also denies ever knowing what plaintiff's race was at any point during the events at issue in this case.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## ANALYSIS

Defendants Kelley, Sugar Grove, and Quist have moved to strike certain portions of plaintiff's Local Rule 12(N) statement and for summary judgment on certain counts of

plaintiff's third amended complaint. Because this court is able to rule on defendants' summary judgment motions without relying on any of the statements that defendants have moved to strike, this court will rule only on the motions for summary judgment.

## I. *Count I and Count II*

Defendant Kelley moves for summary judgment on Count I and Count II of plaintiff's third amended complaint. Count I of plaintiff's third amended complaint alleges intentional deprivation of plaintiff's liberty interest in employment as a police officer. Count II of plaintiff's third amended complaint alleges intentional interference with plaintiff's liberty interest in employment as a police officer without due process of law. Count I and Count II state essentially the same claim. Reviewing plaintiff's third amended complaint, this court will interpret plaintiff's Count I and Count II as stating a claim for the deprivation of a liberty interest in pursuing plaintiff's occupation as a police officer without procedural due process.

Defendant Kelley first argues that plaintiff does not have a protected interest in his occupation as a police officer. Defendant Kelley proceeds to present facts that support his position that plaintiff abandoned his pursuit of a job in law enforcement. Defendant Kelley's argument would be proper only if plaintiff was asserting a claim for deprivation of a property interest. Plaintiff's Count I and Count II, however, do not state claims for deprivation of a property interest. Plaintiff, rather, makes a claim for deprivation of a liberty interest.

Plaintiff asserts that defendant Kelley provided false and defamatory statements about plaintiff to plaintiff's potential future employers. Plaintiff alleges that these false and defamatory statements have caused injury to his liberty interest in the pursuit of his occupation and that he has been stigmatized to such an extent that he is unable to obtain employment and it is unlikely that he will be able to obtain employment as a police officer in the future. Defendant Kelley's second argument in support of his motion for summary judgment is that any alleged defamation by defendant Kelley did not occur during the course of plaintiff's termination and therefore is not actionable as a deprivation of plaintiff's liberty interest.

 A person's liberty interest in employment is implicated when the government imposes a stigma that prevents a public employee from taking advantage of other employment, or makes statements that might harm the employee's reputation, honor, integrity, good name, or standing in the community. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). The Fourteenth Amendment Due Process Clause secures the liberty to pursue a particular calling or occupation, such as a police officer. *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992). A deprivation of a liberty interest may occur when a government official defames an individual when the defamation accompanies a decision to discharge or not hire an employee. *Id.* at 456. There is no liberty interest implicated when a government official merely defames an individual. *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Defamation may be an actionable tort under state law, but it is not a constitutional deprivation. *Siegert,* 500 U.S. at 233, 111 S.Ct. at 1794. The key, therefore, is that the defamation must occur in the course of the termination of employment, at or near the time of termination, since that is when the liberty interest requiring a due process hearing arises if at all. *Davis,* 424 U.S. at 710, 96 S.Ct. at 1165.

 In the present case, plaintiff was terminated in May 1986. Plaintiff alleges defendant Kelley made false and defamatory statements sometime in the fall of 1994, at least eight years after his termination. The alleged statements were clearly not made at or near the time of plaintiff's termination. Therefore, defendant Kelley's alleged statements in 1994 cannot form the basis of a claim of deprivation of a liberty interest and a request for a due process hearing. While plaintiff may be able to maintain an action for defamation or breach of his settlement agreement, he cannot support a claim for deprivation of a liberty interest. According-

ly, this court grants defendant Kelley's motion for summary judgment on Count I and Count II of plaintiff's third amended complaint.

## II. *Count III*

### A. *Defendant Kelley*

 Count III of plaintiff's third amended complaint alleges that defendant Kelley discriminated against him due to plaintiff's race by providing false and defamatory references to potential employers in violation of the Equal Protection Clause of the Fourteenth Amendment. 42 U.S.C. § 1983. In order to establish a claim of discrimination in violation of the Fourteenth Amendment, a plaintiff must establish that he or she is a member of a protected class, and that he or she was subjected to discriminatory treatment because of his or her membership is such class. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995); *Hornung v. Village of Park Forest,* 634 F.Supp. 540, 545 (N.D.Ill.1986). The plaintiff must prove purposeful and intentional acts of discrimination based on his or her membership in a particular class not just on an individual basis. *Sims v. Mulcahy,* 902 F.2d 524, 538 (7th Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). A discriminatory purpose implies that the decisionmaker took a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Id.* at 539.

 Defendant Kelley argues that plaintiff cannot show defendant Kelley acted based on plaintiff's race because plaintiff does not allege that defendant Kelley made any statements about plaintiff's race. It is not essential to plaintiff's claim in Count III for plaintiff to prove defendant Kelley made a direct statement about plaintiff's race. Plaintiff need only show that defendant Kelley intentionally discriminated against plaintiff because of plaintiff's race. Plaintiff states that defendant Kelley's intent to discriminate against him can be shown through defendant Kelley's actions towards plaintiff throughout plaintiff's employment with de-

fendant Kelley. Plaintiff claims that he endured racial harassment and discrimination throughout his employment at defendant North Aurora's police department. Plaintiff states that his racial discrimination and harassment was the direct consequence of the atmosphere of the working conditions defendant Kelley permitted to exist at defendant North Aurora's police department. Plaintiff argues that defendant Kelley's actions towards him in the past can lead to the conclusion that defendant Kelley provided false and defamatory statements to his potential future employers, thereby preventing plaintiff from securing a job as a police officer, because defendant Kelley intended to discriminate against him based on his race.

Plaintiff lists numerous examples of incidents that occurred while he was employed by defendant North Aurora and under the supervision of defendant Kelley. Plaintiff argues that defendant Kelley's actions while plaintiff was working under him demonstrate defendant Kelley's intent to discriminate against plaintiff based on plaintiff's race. Plaintiff maintains that he was paid significantly lower wages and passed over for promotions based on his race and as the result of defendant Kelley's discrimination. Plaintiff states that racial slurs were constantly directed towards him and prisoners by defendant North Aurora police officers and defendant Kelley refused to put a stop to the use of the slurs. Plaintiff also describes incidents of defendant Kelley's behavior towards minorities that could lead a finder of fact to believe that defendant Kelley had the intent to discriminate against minorities.

Defendant Kelley argues that the incidents described by plaintiff allegedly occurred in 1986 and therefore do not have any relation to defendant Kelley's intent when he allegedly made false and defamatory statements about plaintiff when he was providing potential future employers with a reference in 1994. The evidence presented by plaintiff, however, does support, albeit only inferentially, plaintiff's theory that defendant intentionally discriminated against him based on his race in the past and the intent to discriminate continued whenever defendant Kelley was requested to give a reference of plain-

tiff's prior employment with defendant North Aurora. Plaintiff argues that defendant Kelley, acting under the color of state law and in the course of performing his duty to provide a reference for plaintiff's prior employment, chose to continue discriminating against plaintiff based on his race by providing false and defamatory statements about him. Mr. Johnson, a friend of plaintiff, testified in his deposition that defendant Quist told him that defendant Kelley made the alleged false statements.

Viewing the evidence in the light most favorable to plaintiff and based on the statements provided by plaintiff, there remains a genuine issue of material fact as to whether defendant Kelley deprived plaintiff of equal protection by providing false and defamatory statements to plaintiff's potential future employers with the intent of discriminating against plaintiff based on plaintiff's race. Whether defendant Kelley's actions were inspired by an improper racially discriminatory motive cannot be determined at this juncture. Further inquiry into the subjective intent of defendant Kelley must be made by a finder of fact. Accordingly, defendant Kelley's motion for summary judgment on Count III of plaintiff's third amended complaint is denied.

### B. *Defendants Sugar Grove and Quist*

 Count III of plaintiff's third amended complaint alleges that Defendants Sugar Grove and Quist discriminated against him due to plaintiff's race by not hiring plaintiff for a part-time police officer position and hiring two, white officers who were less qualified than plaintiff. 42 U.S.C. § 1983. The plaintiff has the burden of first proving a prima facie case of racial discrimination. The plaintiff must show that: (1) he or she belongs to a racial minority; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) despite his or her qualifications, he or she was rejected; and (4) the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v.*

**3.** The *McDonnell Douglas* framework is applicable to racial discrimination in employment claims under 42 U.S.C. § 1983. *St. Mary's Hon-*

*Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[3] If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant succeeds in carrying this burden, then the plaintiff must show that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. *Id.* 411 U.S. at 804, 93 S.Ct. at 1825.

Plaintiff in this case belongs to a racial minority. Defendants Sugar Grove and Quist concede that plaintiff applied for a position as a part-time police officer and was qualified for that position. Plaintiff, however, was rejected. After plaintiff's rejection, the position remained open and defendants Sugar Grove and Quist continued to seek applicants from persons of plaintiff's qualifications. Therefore, plaintiff has established a prima facie case of racial discrimination.

Plaintiff concedes that defendants Sugar Grove and Quist have articulated a legitimate reason for not hiring plaintiff. Defendant Quist states that he allegedly received negative recommendations from plaintiff's prior employers. Plaintiff, however, maintains that defendant Quist told Mr. Johnson that defendant Quist would not hire plaintiff because plaintiff filed a prior lawsuit and defendant Sugar Grove did not want to take a chance with future lawsuits. Plaintiff argues that this reason was a pretext for race discrimination because the two, white officers subsequently hired had filed lawsuits against their former employers. Furthermore, plaintiff argues that defendant Quist did not have a conversation with Mr. Budde, one of plaintiff's prior employers, and Mr. Budde denies ever having a conversation with defendant Quist about plaintiff, therefore plaintiff claims that defendant Quist's action of not hiring him was motivated by an impermissible desire to discriminate against plaintiff based on plaintiff's race.

 Pretext is defined as "a lie, specifically a phony reason for some action."

*or Ctr. v. Hicks,* 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 2746–47 n. 1, 125 L.Ed.2d 407 (1993).

*Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). To establish pretext, the plaintiff must show that either: (1) the employer was more likely motivated by a discriminatory reason, or (2) the employer's proffered reason is unworthy of credence. *McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 372 (7th Cir.1992). When "the plaintiff attempts to show the employer's proffered rationale is incredible, he [or she] need not present any direct evidence of discrimination." *Id.* (emphasis original). Plaintiff may simply attack the credibility of the employer's proffered reason. *Id.* A showing that a proffered reason is a pretext may itself be equivalent to a finding that the employer intentionally discriminated. "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his [or her] decision on an impermissible consideration such as race." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (emphasis original).

▮ In the present case, defendant Quist states that he received a negative reference from Mr. Budde, one of two of plaintiff's prior employers that he contacted. Mr. Budde, however, has stated in his deposition that he cannot recall ever having a conversation with defendant Quist about plaintiff. While defendant Quist is correct that this fact does not necessarily mean that the conversation indeed never took place, there remains a genuine issue of fact as to whether defendant Quist did indeed receive a reference from Mr. Budde about plaintiff. If defendant Quist did not ever speak with Mr. Budde, then he only spoke with defendant Kelley. Defendants Quist and Kelley both state that defendant Kelley merely told defendant Quist that he could not talk about plaintiff due to a lawsuit. Mr. Johnson, however, testified in his deposition that defendant Quist told him that defendant Kelley made several negative comments about plaintiff. These conflicting facts make it impossible at this juncture for this court to conclude that there are no material issues of fact in dispute. If indeed defendant Quist received a

negative reference about plaintiff from defendant Kelley then he may have been justified in not hiring plaintiff. Defendant Quist, however, himself maintains that he did not receive any information about plaintiff from defendant Kelley. Defendant Quist, therefore, could have only relied on Mr. Budde's statements. Mr. Budde, however, maintains that he never spoke of plaintiff with defendant Quist. Therefore, plaintiff has presented sufficient evidence to raise doubt as to whether defendant Quist had a legitimate reason for not hiring plaintiff due to poor references.

Mr. Johnson, has presented testimony that he was told by defendant Quist that defendant Quist did not want to hire plaintiff because he filed a prior lawsuit and defendant Sugar Grove had problems with lawsuits in the past. Defendant Quist denies making this statement. Even if defendant Quist did rely on this reason for not hiring plaintiff, plaintiff has presented evidence that the two police officers that defendant Quist did eventually hire, Mr. Barna and Mr. Perkins, had themselves filed lawsuits or began lawsuit proceedings against their prior employers. Defendant Quist claims that he was unaware of this information, yet at least Mr. Barna's application to defendant Sugar Grove states that he had a civil case pending against his prior police department. Therefore, plaintiff has raised an issue of fact as to the credibility of this reason for not hiring plaintiff.

Defendant Quist argues that he never knew of plaintiff's race at any time during the events in question. Plaintiff counters that defendant Quist must have known of his race. Plaintiff argues that defendant Quist spoke with at least seven people about plaintiff and the issue of his race had to have come up within some or at least one of those conversations. Plaintiff posits that the issue of his race also must have come up when defendant Quist spoke with defendant Kelley about the fact that plaintiff had filed a lawsuit against defendant North Aurora. Plaintiff claims that the subject of that lawsuit, racial discrimination, must have come up in that conversation. Plaintiff also states that he was recommended to defendant Quist by

his friend Mr. Johnson who is also African–American. Alternatively, plaintiff maintains that his name could have at least raised the inference that he may be of Hispanic descent and that defendant Quist, who should be familiar with the neighborhoods in his area, may have known that the home address given by plaintiff in his application to defendant Sugar Grove was located in a neighborhood in which seventy-five percent of the people who live there are Mexican–American. While this evidence does not directly prove that defendant Quist knew what plaintiff's race was, it does support circumstantially an inference that defendant Quist had knowledge of plaintiff's race. This court must view the evidence in the light most favorable to plaintiff. Looking at the totality of the evidence, plaintiff has presented sufficient circumstantial evidence that could lead to the inference that defendant Quist knew of plaintiff's race and acted with the intent to discriminate against plaintiff due to plaintiff's race. The issue is one of credibility that cannot be determined at this time.

Finally, plaintiff has presented evidence that defendant Quist did not follow his customary practice when he hired the two, white police officers, Mr. Barna and Mr. Perkins. Defendant Quist's customary preliminary background check is to call the last few places where a candidate has been employed. Defendant Quist, however, never contacted the prior employers of Mr. Barna and Mr. Perkins. These prior employers were police departments. Another reason defendant Quist gives as justification for not hiring plaintiff is that when defendant Kelley allegedly told him that he could not talk about plaintiff, defendant Quist was unable to speak with a prior employer who could comment directly on plaintiff's prior police experience. Yet defendant Quist never spoke with Mr. Barna's or Mr. Perkins' prior employers who were police chiefs, who would have thereby provided defendant Quist with references about Mr. Barna's and Mr. Perkins' police experience. According to plaintiff's evidence, these references would have been extremely negative for both Mr. Barna and Mr. Perkins. Given the evidence presented by plaintiff, there remains an unresolved issue as to the unequal treatment defendants Sugar Grove and Quist gave to Mr. Barna and Mr. Perkins versus plaintiff.

The evidence, when viewed in the light most favorable to plaintiff, is sufficient to raise a factual issue as to the motivation underlying defendant Quist's conduct. Plaintiff has presented evidence to raise an inference that the reasons articulated by defendant Quist for not hiring plaintiff are not credible and are thus a pretext for racial discrimination. There remains a material question of fact as to whether defendant Quist intended to discriminate against plaintiff based on plaintiff's race when he did not hire plaintiff and yet hired two, white officers who plaintiff maintains are less qualified and were hired under vastly differently criteria than what plaintiff faced. Whether defendants Sugar Grove and Quist improperly acted with a discriminatory motive cannot be determined at this juncture. Accordingly, defendants Sugar Grove's and Quist's motion for summary judgment on Count III of plaintiff's third amended complaint is denied.[4]

Defendant Quist asserts that he is entitled to immunity from suit based on the doctrine of qualified immunity. Qualified immunity shields government officials, acting in their

---

4. Defendant Sugar Grove asserts in its motion for summary judgment that if plaintiff cannot prove his case against defendant Quist, then plaintiff cannot prove his case against defendant Sugar Grove and summary judgment should be granted for defendant Sugar Grove. Plaintiff has asserted that defendant Quist is the absolute policymaker for defendant Sugar Grove. Plaintiff cites defendant Sugar Grove's village ordinances that allegedly give defendant Quist final decision-making authority. Defendants Sugar Grove and Quist do not provide any evidence or argument that address or counter plaintiff's claim. Municipal liability may attach for a single decision by a municipal policymaker where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir.1988). Accordingly, defendant Sugar Grove will remain a defendant in this case since plaintiff has alleged, and defendants Sugar Grove and Quist do not dispute, that defendant Quist had final authority to establish defendant Sugar Grove's policy with respect to the hiring practice of defendant Sugar Grove. *Yeksigian v. Nappi,* 900 F.2d 101, 104–05 (7th Cir.1990).

official capacity, from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "When the law is settled on a particular point, public employees are expected to conform their conduct accordingly, and they may be held liable when they do not." *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir. 1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638.

■ To determine whether qualified immunity is applicable in a case, the court must make a two part inquiry: (1) does the alleged conduct set out a constitutional violation; and (2) were the constitutional standards clearly established at the time in question. *Hill v. Shelander,* 992 F.2d 714, 717 (7th Cir.1993). Intent is relevant to the first part of the inquiry, but not to the second part. *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986). Thus, the defendant's subjective state of mind is relevant only to the determination of whether a constitutional violation exists but not in deciding if the constitutional standard was clearly established. *Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir. 1990), *cert.denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ The first inquiry is whether plaintiff has alleged a constitutional violation. The evidence must be viewed in the light most favorable to plaintiff. *Hill,* 992 F.2d at 718–19. Plaintiff has alleged that defendant Quist violated his right to equal protection when defendant Quist made his hiring decision for defendant Sugar Grove's police department. Plaintiff claims that defendant Quist's actions were racially motivated. As stated above, there remain disputed issues of fact on the issue of whether defendant Quist's proffered reasons for not hiring plaintiff were mere pretext for racial discrimination and whether defendant Quist thus acted with the intent to racially discriminate against plaintiff. Plaintiff has presented evidence that the two, white police officers that were subsequently hired by defendant Quist were not evaluated under defendant Quist's customary policy for evaluating candidates and thus faced vastly different hiring criteria than plaintiff. As stated above, plaintiff has sufficiently alleged a constitutional violation based on a violation of his equal protection right to not be discriminated against based on his race. At a minimum, plaintiff has raised genuine issues of fact regarding defendant Quist's discriminatory intent.

■ In the second inquiry, the court must "determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz v. Parrott,* 883 F.2d 551, 554 (7th Cir.1989). In this case, the law at the time of the incident in question was clearly established. Plaintiff alleges that defendant Quist violated his right to equal protection when defendant Quist did not hire him and hired two, less qualified, white police officers in violation of defendant Quist's customary hiring practice. Plaintiff claims that defendant Quist's actions were racially motivated. A government official cannot practice racial discrimination when making hiring decisions. This constitutional standard was sufficiently clear in 1994 that a reasonable official would have understood that what he or she was doing, given the facts of this case, violated the right to be free from racial discrimination. Whether, in fact, defendant Quist violated this right cannot be determined at this juncture.

Defendant Quist argues that he is entitled to qualified immunity because he states that he never knew what plaintiff's race was during the events at issue in this case. Plaintiff claims that he has presented evidence to demonstrate that defendant Quist's knowledge of plaintiff's race can be inferred. Defendant Quist relies on *Fiorenzo v. Nolan,* 965 F.2d 348 (7th Cir.1992), to support his position that he is entitled to qualified immunity. In *Fiorenzo,* the court affirmed a grant of qualified immunity to the Chief of the Sheriff's Police Department who was sued by officers alleging that they were improperly transferred by the Chief due to their race and political affiliation. *Id.* at 351–52. In the Chief's deposition, he had stated that he did not know the race or the political affiliations of the plaintiffs prior to the transfers. *Id.* at 352. The court said that since there

was no evidence to rebut that testimony, no constitutional violation was proven. *Id.* In this case, however, as stated above, plaintiff has presented circumstantial evidence of defendant Quist's intent to not hire plaintiff because of plaintiff's race that serves to rebut defendant Quist's denial of ever knowing plaintiff's race and leaves the issue of defendant Quist's intent a material question of fact that cannot be decided at this time.

Because defendant Quist's alleged conduct sets out a constitutional violation and because the constitutional standard was clearly established at the time of the alleged violation, defendant Quist is not entitled to qualified immunity at this stage of the proceedings. Accordingly, defendants Sugar Grove's and Quist's motion for summary judgment on Count III of plaintiff's third amended complaint is denied.

### CONCLUSION

Based on the above stated reasons, defendant Kelley's motion for summary judgment is GRANTED as to Counts I and II and DENIED as to Count III and defendants Village of Sugar Grove's and Quist's motion for summary judgment on Count III is DENIED. The parties are strongly urged to discuss the settlement of this case. This case is set for report on status at 10:00 a.m. on June 18, 1997.